UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x

RANDY MORRIS,

                                           Plaintiff,

-against-

CITY OF NEW YORK, POLICE OFFICER JOSEPH
SWICICKI #21546, POLICE OFFICER FRANCIS
AINDO #15407, SERGEANT STEPHEN VOLPE #4757,
JOHN DOE OFFICERS #1-3

                                           Defendants.

------------------------------------------------------------------- x

**COMPLAINT AND JURY DEMAND**

Docket No. 15CV3799

      Plaintiff Randy Morris by his attorneys, Stoll, Glickman & Bellina, LLP, for his complaint alleges as follows:

## PRELIMINARY STATEMENT

1. This is a civil rights action in which Plaintiff seeks relief through 42 U.S.C. § 1983 for the violation of his Fourth and Fourteenth Amendment rights in addition to violations of the laws and Constitution of the State of New York.

2. The claim arises from an April 7, 2014 incident in which New York City Police Department ("NYPD") Officers of the 84th Precinct, acting under color of state law, intentionally and willfully subjected Mr. Morris to false arrest.

3. Plaintiff seeks monetary damages (special, compensatory, and punitive) against Defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

## JURISDICTION

4. This action arises under the Fourth and Fourteenth Amendments to the United States Constitution and under 42 U.S.C. §§ 1983 and 1988.

5. The jurisdiction of this court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3)-(4), 1367(a), and the doctrine of pendent jurisdiction.

## VENUE

6. Venue is laid within the Eastern District of New York in that Defendant City of New York is located within, and a substantial part of the events giving rise to the claim occurred within, the boundaries of the Eastern District.

## PARTIES

7. Plaintiff Randy Morris is a resident of Kings County in New York State.

8. The City of New York ("City") is a municipal corporation organized under the laws of the State of New York. At all times relevant hereto, Defendant City, acting through the NYPD, was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline and retention, and conduct of all NYPD personnel. In addition, at all times here relevant, Defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York.

9. Police Officer JOSEPH SWICICKI was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Defendant Officer Swicicki was involved in the decision to arrest Plaintiff without probable cause or failed to intervene in the actions of his fellow officers when he observed them arresting Plaintiff without probable

cause. Defendant Officer Swicicki is sued in his individual capacity.

10. Police Officer FRANCIS AINDO was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Defendant Officer Aindo was involved in the decision to arrest Plaintiff without probable cause or failed to intervene in the actions of his fellow officers when he observed them arresting Plaintiff without probable cause. Defendant Officer Aindo is sued in his individual capacity.

11. Sergeant STEPHEN VOLPE was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Defendant Sergeant Volpe was involved in the decision to arrest Plaintiff without probable cause or failed to intervene in the actions of his fellow officers when he observed them arresting Plaintiff without probable cause. Defendant Sergeant Volpe is sued in his individual capacity.

12. All John Doe Defendants, whose names are not presently known, were at all times here relevant police officers of the NYPD, and as such were acting in the capacity of agents, servants, and employees of the City of New York. On information and belief, at all times relevant hereto, Defendant police officers were involved in the decision to arrest Plaintiff without probable cause or failed to intervene in the actions of their fellow officers when they observed them arresting Plaintiff without probable cause. The police officer Defendants are sued in their individual capacities.

13. At all times here mentioned Defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

## FACTUAL ALLEGATIONS

14. On April 7, 2014, at approximately 11:45 A.M., Mr. Morris was waiting inside his parked car near 111 Bridge Street in Kings County. He was waiting to see his auto mechanic to get his car fixed.

15. As he was waiting, Mr. Morris's friend, Justin Woods, walked by. The two men greeted each other, and Mr. Woods got into Mr. Morris's car. They had a conversation for a few moments.

16. Suddenly, an unmarked car drove by, did a U-turn, and circled back. Two uniformed NYPD officers – Officers Aindo and Swicicki – got out of the car and approached Mr. Morris's car.

17. Mr. Morris had not committed any crime, and was simply sitting in his parked car, talking to a friend, while he waited for his mechanic.

18. The officers told both men to get out of the car. They complied. Mr. Morris began to videotape the encounter.

19. Mr. Morris asked Officer Aindo why he had been instructed to get out of his car. Officer Aindo did not respond. He told the officer that he had not committed any crime and that he did not consent to any searches.

20. Mr. Morris complied with the officers' order to stand outside of his car. After a few minutes, Mr. Morris informed the officers that he was leaving because the officers had no reason to keep him there.

21. Officer Aindo told him he was not permitted to leave because he was "being detained." Mr. Morris asked: "Why?"

22. Officer Aindo responded: "I don't have to tell you why."

4

23. Mr. Morris asked: "Am I under arrest?" Officer Aindo replied: "You're being detained."

24. Mr. Morris then asked Sergeant Volpe, who was standing several feet away: "Sergeant, why am I being detained?" Sergeant Volpe stood facing Mr. Morris with his arms folded and did not answer the direct question.

25. A few moments later, the police officers asked for Mr. Morris's license and registration. Before he could provide the requested documents, the officers placed Mr. Morris in handcuffs and searched him and his car. They did not find any contraband on him or in his car.

26. The officers took Mr. Morris to the 84th Precinct, where they searched him again. Again, they did not find any contraband on him. Nonetheless, they did not release him from police custody.

27. While in police custody, Mr. Morris began to experience chest pains and high blood pressure. He requested medical attention. A police officer escorted Mr. Morris – who was placed in leg shackles – to Brooklyn Hospital.

28. At approximately 7:00 P.M., Mr. Morris was discharged from the hospital and taken back to the precinct.

29. At approximately 11:00 P.M., Mr. Morris was taken to Central Booking.

30. At approximately 1:00 A.M. on April 8, 2014, Mr. Morris was released from police custody. He was informed that the Kings County District Attorney's Office had declined to prosecute him because they did not have sufficient evidence.

31. Mr. Morris then returned to the 84th Precinct to retrieve his car and other vouchered property.

32. At all times during the events described above, the Defendant police officers were

engaged in a joint venture and formed an agreement to violate Plaintiff's rights. The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during said events. They failed to intervene in the obviously illegal actions of their fellow officers against Plaintiff.

33. During all of the events above described, Defendants acted maliciously and with intent to injure Plaintiff.

## DAMAGES

34. As a direct and proximate result of the acts of Defendants, Plaintiff suffered the following injuries and damages:

   a. Violation of his rights pursuant to the Fourth Amendment of the United States Constitution to be free from an unreasonable search and seizure of their persons;

   b. Violation of his rights pursuant to the Fourteenth Amendment of the United States Constitution to due process;

   e. Emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, anxiety;

   f. Loss of liberty; and

   g. Physical pain and suffering.

## FIRST CAUSE OF ACTION
42 U.S.C. § 1983 – FALSE ARREST

35. The above paragraphs are here incorporated by reference.

36. The officer Defendants wrongfully and illegally arrested, detained, and imprisoned Plaintiff.

37. The wrongful, unjustifiable and unlawful apprehension, arrest, detention, and imprisonment of Plaintiff was carried out without a valid warrant, without Plaintiff's consent,

6

and without probable cause or reasonable suspicion.

38. At all relevant times, Defendants acted forcibly in apprehending, arresting, and imprisoning Plaintiff.

39. All of this occurred without any illegal conduct by Plaintiff.

40. The officer Defendants acted under color of law and in their individual and official capacities and within the scope of their respective employment as NYPD officers. Said acts by officer Defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers. Said Defendants acted willfully, knowingly and with the specific intent to deprive Plaintiff of his constitutional and statutory rights to be free from unreasonable search and seizure and to due process of law pursuant to the Fourth and Fourteenth Amendments secured by the United States Constitution, and are liable to Plaintiff under 42 U.S.C. § 1983.

41. As a direct and proximate result of the misconduct and the abuse of authority detailed above, Plaintiff sustained the damages described above.

## SECOND CAUSE OF ACTION
42 U.S.C. § 1983 – MUNICIPAL LIABILITY

42. The above paragraphs are here incorporated by reference.

43. The City is liable for the damages suffered by Plaintiff as a result of the conduct of their employees, agents, and servants, in that, after learning of their employees' violation of Plaintiff's constitutional rights, they failed to remedy the wrong; they have created a policy or custom under which unconstitutional practices occurred and allowed such policies or customs to continue, and they have been grossly negligent in managing subordinates who caused the unlawful condition or event.

44. The City has been alerted to the regular use of false arrests by its police officers, but has nevertheless exhibited deliberate indifference to such false arrests; that deliberate

7

indifference caused the violation of Plaintiff's constitutional rights in this case.

45. The aforesaid event was not an isolated incident. The City has been aware for some time, from lawsuits, Notices of Claim, complaints filed with the Civilian Complaint Review Board ("CCRB"), and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of police officers unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of his fellow officers. Nevertheless, the City has allowed policies and practices that allow the aforementioned to persist.

46. For example, the well documented failures of the CCRB, a City agency, to substantiate obviously meritorious citizen complaints have gone uncorrected. The CCRB regularly finds complainants lack credibility based on the fact that such complainants have also brought lawsuits to remedy the wrongs they have experienced, a practice that often results in not substantiating the most serious charges brought to them. In addition, the CCRB virtually never initiates their own findings of false statements against officers who have made false statements to the CCRB in their own defense, nor do they initiate findings that officers have failed to report their fellow officers' misconduct; thus, officers have no real incentive to come forward, or to testify truthfully at the CCRB. The CCRB has no enforcement mechanisms once making a finding against an officer; it can only make recommendations to the NYPD, once finding misconduct by an officer.

47. The NYPD, once receiving a substantiated complaint by the CCRB, fails to adequately discipline officers for misconduct. The NYPD Department Advocate, which is endowed with the responsibility of following up on substantiated CCRB charges, is understaffed and

8

underutilized. Furthermore, in the extraordinarily rare event that the CCRB substantiates a complaint and the Department Advocate proves the case in an internal trial against an officer, the police commissioner still maintains the power to reduce the discipline against such an officer, which Commissioner Bratton has done on many occasions.

48. Further, the City has no procedure to notify individual officers or their supervisors of unfavorable judicial review of his conduct. Without this notification, improper search and seizure practices and incredible testimony go uncorrected. Additionally, according to a report of the New York City Bar Association issued in 2000, the City has isolated the Law Department from the discipline of police officers, so that civil suits against police officers for actions taken in his capacity as police officers have no impact on the officers' careers, regardless of the outcome of the civil actions. Alan Hevesi, as New York City Comptroller, in 1999 reported that there was a "total disconnect" between the settlements of even substantial civil claims and police department action against officers.

49. The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights. Despite such notice, the City has failed to take corrective action. This failure and these policies caused the officers in the present case to violate Plaintiff's civil rights, without fear of reprisal.

50. Plaintiff has been damaged as a result of the deliberate indifference of the City to the constitutional rights of the City's inhabitants.

WHEREFORE, Plaintiff demands judgment against the Defendants, jointly and severally, as follows:

A. In favor of Plaintiff in an amount to be determined by a jury for each of Plaintiff's causes of action;

9

B. Awarding Plaintiff punitive damages in an amount to be determined by a jury;

C. Awarding Plaintiff reasonable attorneys' fees, costs and disbursements of this action; and

D. Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: June 23, 2015
Brooklyn, New York

TO:
City of New York
100 Church Street
New York, NY 10007

Officer Joseph Swicicki #21546
84th Precinct
301 Gold Street
Brooklyn, NY 11201

Officer Francis Aindo #1540
84th Precinct
301 Gold Street
Brooklyn, NY 11201

Sergeant Stephen Volpe #4757
84th Precinct
301 Gold Street
Brooklyn, NY 11201

John Doe Officers #1-3

Respectfully submitted,

*Amy Robinson* (signature)

Amy E. Robinson, Esq.
Stoll, Glickman & Bellina, LLP
475 Atlantic Ave, 3rd floor
Brooklyn, NY 11217
(718) 852-3710
arobinson@stollglickman.com

*Attorneys for Plaintiff*